

| | |
|---|---|
| Warren J. Stapleton, 018646<br>Brandon Hale, 027388<br>**OSBORN MALEDON, P.A.**<br>2929 North Central Avenue<br>21st Floor<br>Phoenix, Arizona 85012-2793<br>(602) 640-9000<br>E-mail:wstapleton@omlaw.com<br>        bhale@omlaw.com<br>Attorneys for Vincent Jackson | Kim A. Novi<br>**LAW OFFICE OF KIM NOVI, LLC**<br>22 W. Washington<br>Suite 1500<br>Chicago, Illinois, 60602<br>(312) 750-9083<br>kim.novi@att.net |

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| N'GENUITY ENTERPRISES COMPANY,<br><br>        Debtor, | Chapter 11 Proceeding<br><br>No. 2:14-bk-11553-GBN<br><br>**JACKSON'S MOTION TO DISMISS N'GENUITY'S BANKRUPTCY PETITION OR, IN THE ALTERNATIVE, TO APPOINT A TRUSTEE** |

Pursuant to 11 U.S.C. § 1112 and Fed. R. Bankr. P. 1017, Vincent E. "Bo" Jackson ("Jackson"), by and through undersigned counsel, hereby moves for entry of an Order dismissing this Chapter 11 Proceeding, or in the alternative, for the appointment of a Chapter 11 Trustee. "Cause" plainly exists for dismissal because (1) N'Genuity cannot show an extraordinary change in circumstances that substantially impaired its performance under the existing plan of reorganization; (2) it is abundantly clear that N'Genuity filed bankruptcy solely to avoid paying Jackson in accordance with N'Genuity's confirmed bankruptcy plan and this Court's decision on Jackson's claims; (3) N'Genuity continues to be grossly mismanaged; and (4) the bankruptcy petition was not authorized..

This Motion is supported by the following Memorandum of Points and Authorities and the record before this case arising from N'Genuity's first bankruptcy, Case No. 2-11-bk-28705 ("N'Genuity I").

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

N'Genuity's new Chapter 11 filing is not a good faith reorganization attempt. It is yet another attempt by N'Genuity to avoid adverse rulings in the Northern District of Illinois and to use the bankruptcy process to settle a shareholder dispute. N'Genuity's second bankruptcy also attempts to renege on the promises the company made under its confirmed bankruptcy plan, and sidestep the orders entered by this Court in connection with its ruling on Jackson's bankruptcy claim. None of these objectives is a legitimate use of the Bankruptcy Code.

Certainly, the events since the confirmation of N'Genuity's reorganization plan in N'Genuity I do not support consecutive bankruptcy filings – which require an unforeseeable change in circumstances that would prevent performance under N'Genuity's confirmed bankruptcy plan. *See, e.g., In re Caviata Attached Homes, LLC*, 481 B.R. 38, 46 (9th Cir. BAP 2012). Over the last two years, N'Genuity has outperformed the gross revenue projections contained in its disclosure statement by over $16 million (an almost 50% increase over the projections). *Compare* N'Genuity I projections, Dkt #127-2, Schedule 2, p. 41 of 52, a copy of this page is attached hereto as Exh. A, with Exhs. B and C (actual results for 2012 and 2013). Notwithstanding its exceptional economic performance, and unlike the first case, N'Genuity claims that it is now insolvent by $727,896.62. *See* Dkt #1, p. 5. N'Genuity achieves this woeful balance sheet by asserting that N'Genuity still owes IMG $977,982.80 (for IMG's N'Genuity I claim) and owes Valerie Littlechief $431,592 (for damages arising from her purchase of N'Genuity stock).[1] *See* Dkt #1, pp. 6-7. The Court may recall that it took a dim view of potential insider claims in its judgment on Jackson's bankruptcy claim, stating: "[g]iven the sorry state of record and document preservation of both debtor and insiders, it is difficult for the court to currently predict a result of other than zero for a challenged insider bankruptcy claim." *See* N'Genuity I, Dkt #693, p. 104. With respect to Littlechief's alleged

---

[1] Shares of stock that N'Genuity nevertheless represents to the Court that are still valid and outstanding. *See* Dkt #1, p. 5.

claim, even if she could somehow assert that this Court's ruling did not eliminate her "stock purchase-based" claim, her pre-N'Genuity I claim would be barred by N'Genuity's bankruptcy discharge.[2]

Recent payments to N'Genuity Insiders (defined to include Valerie Littlechief, her husband, Alfred Bowen, their son, Dustin Bowen, and their entities) are also an unreliable guide to N'Genuity's alleged dire financial condition. Between January 1, 2014 and May 9, 2014 (roughly four months), N'Genuity made the following payments to Insiders: (1) N'Genuity paid Alfred Bowen's company UAE $189,143.63. *See* Exh. D[3] attached hereto. The Court may recall that the UAE contract was not disclosed in N'Genuity's bankruptcy plan and never approved by non-conflicted directors or shareholders. The Court may also recall that as recently as April 2014, N'Genuity suggested to this Court that N'Genuity paid UAE only $5,000 per month. *See* N'Genuity I, Dkt #772, p. 9, Dkt #805, p. 11. (2) Immediately following Jackson's March 2014 suit against N'Genuity and Alfred Bowen in the Northern District of Illinois, N'Genuity also hired Alfred Bowen and directly paid him an additional $19,483.96 between April 11, 2014 and May 9, 2014. *See* Exh. E attached hereto. (3) N'Genuity paid Dustin Bowen $256,056.97. *See* Exh. F attached hereto. The Court may recall that, under N'Genuity's confirmed plan, Dustin Bowen's annual (as opposed to four-month) salary is $180,000. *See* N'Genuity I, Dkt #299, p. 17 of 27, § 6.1. The Court may also recall, since Dustin Bowen is also debtor before the Court, that Dustin recently converted his Chapter 11 case to a Chapter 7. $236,839.99 of the $256,056.97 paid to Dustin since January 1, 2014 occurred after his case was converted to a Chapter 7 – when these funds would NOT be

---

[2] Littlechief also did not file a proof of claim in N'Genuity I – an additional bar to her claim.
[3] Exhibits D, E, and F are QuickBooks documents received by counsel from N'Genuity's books and records. The Northern District of Illinois required these documents be turned over to Jackson's counsel and further required that Jackson's professionals maintain the confidentiality of these documents. Although these insider payments should be disclosed in the Debtors schedules and statements, Jackson has not filed these exhibits on the publicly available ECF system. Instead, Jackson has provided copies of these exhibits to the Court and N'Genuity along with the objection. If the Court prefers, Jackson can also file these documents under seal.

available to his creditors. Thus, Dustin received almost 150% of his annual salary in four months in a fashion that allowed him to avoid giving any of these funds to his creditors.

In addition to these Insider payments, N'Genuity has paid Gallagher & Kennedy ("G&K") $553,848.06[4] since October 28, 2013 – the date that this Court rendered Judgment in favor of Jackson on his bankruptcy claim. *See* Jackson's objection to G&K's employment. N'Genuity has paid Jackson's counsel zero during this time, notwithstanding the Court's (un-appealed) Judgment that the payment of Jackson's fees "shall enjoy the same priority" as payment of G&K's fees. N'Genuity I, Dkt #693, p. 10.

In short, N'Genuity has paid Littlechief's family, and N'Genuity's counsel, rather than paying the obligations due under its confirmed bankruptcy plan. N'Genuity's bankruptcy was not undertaken in good faith and is an abuse that warrants dismissal and sanctions. *See In re Marsch*, 36 F.3d 825, 830-31 (9th Cir. 1994) (upholding sanctions for bankruptcy filed for an improper purpose).

## II.  FACTUAL AND PROCEDURAL BACKGROUND.

N'Genuity first filed for bankruptcy nearly three years ago in the wake of the Northern District of Illinois' memorandum decision granting Jackson a preliminary injunction enjoining N'Genuity from making any further payments to, or on behalf of, the Insiders and appointing a receiver. *See* Dkt #27-1, Exh. A, p. 58. The injunction was based on the overwhelming evidence Jackson had uncovered of self-dealing and financial manipulation. *See id.* There can be little doubt that N'Genuity's original bankruptcy filing was motivated by N'Genuity's desire to get out from under the terms of the injunction. In fact, immediately after the bankruptcy was filed, N'Genuity resumed the improper payments – paying an Insider, Impact Marketing Group ("IMG"), $73,716 during the month after filing. *See* N'Genuity I, Dkt #41, Exh. A, p. 1 (MCA's actual v. budgeted expenses).

---

[4] $278,848.06 were payments for past services, and $275,000 was paid as a bankruptcy retainer sometime after June 30, 2014.

4

The Insiders also individually used bankruptcy to escape the consequences of their self-dealings. In early February 2012, Jackson asked the Illinois District Court to freeze the assets of the Insiders after the Court entered a default judgment as to liability against the Insiders. *See* Case No. 09-CV-6010, Dkt #416. Several of the Insiders filed for bankruptcy days before the emergency hearing on Jackson's motion, causing the District Court Judge to note that the timing of the bankruptcy petitions "gives rise to the inference that they were not filed in good faith." Case No. 09-CV-6010, Dkt #422, p. 2, attached hereto as Exhibit G.

In late March 2012, Jackson and N'Genuity reached a settlement that allowed N'Genuity's bankruptcy plan to move forward, but preserved Jackson's rights against N'Genuity and the Insiders. This Court confirmed N'Genuity's bankruptcy plan on April 4, 2012. *See* N'Genuity I, Dkt. #299. The plan allowed Jackson to retain his existing equity interest in N'Genuity (in an amount that, at the time, needed to be determined by the Bankruptcy Court) and required N'Genuity to pay in full any amount Jackson was awarded for the claims he had asserted against N'Genuity within six months of the Judgment. *Id.* at p. 15.

Jackson's claims against N'Genuity were tried before this Court in late 2012 and early 2013. N'Genuity I, Dkt. #693, p. 3. The Court ruled in Jackson's favor, reaffirming Jackson's 49% interest in N'Genuity and finding that "debtor through its insiders worked a significant harm and appreciable injustice on [Jackson] by their actions and failure to act regarding financial management, record keeping, and undisclosed insider transactions." *Id.* at p. 101. The Court awarded Jackson $500,000 in damages, plus Jackson's attorneys' fees and costs. *Id.* at p. 103.

Unfortunately, the Court's ruling has done little to alleviate N'Genuity's misconduct. As noted above, N'Genuity continues to make large and inappropriate payments to Insiders – and these payments have massively accelerated since January 2014. All told, including those payments identified above, N'Genuity has paid Alfred Bowen's UAE, $302,043.63 post-confirmation (since April 4, 2012) – substantially more than $5,000 per month. *See* Exh. D. N'Genuity has additionally directly paid Alfred Bowen $29,608.96 post-confirmation (since

April 4, 2012). *See* Exh. E. And, N'Genuity has paid Dustin Bowen $588,426.78 post-confirmation (since April 4, 2012) – over $220,000 more than his purported annual salary under N'Genuity's confirmed plan. *See* Exh. F. As this Court may recall, the "final" inspections Jackson obtained under this Court's orders occurred in December 2013 – before a substantial amount of these Insider payments occurred (as set forth above in the Introduction). Nevertheless, based upon the pre-2014 inspections, Jackson had grounds to bring a new lawsuit against N'Genuity and Alfred Bowen based upon their post-confirmation misconduct.

On March 27, 2014, Jackson filed a new suit against N'Genuity and Alfred Bowen in Illinois District Court to enjoin their continued misconduct (the "2014 Action"). *See* N'Genuity I, Dkt #749-2. N'Genuity immediately filed an Emergency Motion to enjoin the 2014 Action, claiming that the proceedings violated the discharge injunction and plan of reorganization. *See* N'Genuity I, Dkt. #749. Following extensive briefing and oral argument, this Court denied the Emergency Motion, ruling that Jackson was free to continue with the 2014 Action. *See* N'Genuity I, Dkt. #809.

Undeterred, N'Genuity turned to the only tactic left. On July 28, 2014, the day before N'Genuity was scheduled to respond to Jackson's request for fees in the Illinois District Court (fees awarded by this Court in the Judgment), N'Genuity filed a second Voluntary Petition under Chapter 11. N'Genuity's action stopped (a) proceedings to liquidate the amount of Jackson's attorneys' fees in this Court and Illinois; (b) the 2014 Action against N'Genuity; and (c) Jackson's appeal of the amount of damages awarded on his claim.

## II. LEGAL ARGUMENT.

Under § 1112(b)(1), "on request of a party in interest, and after notice and a hearing," unless unusual circumstances are present and identified by the court, a bankruptcy court "shall convert a case under [chapter 11] to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of the creditors and the estate, if the movant establishes cause." *See In re Sanders*, 417 B.R. 596, 600 (D. Ariz. 2009); 11 U.S.C. § 1112(b)(1). Although "cause" is not defined in the Bankruptcy Code, § 1112(b)(4) provides a non-exhaustive list of

circumstances that constitute cause to dismiss or convert. 11 U.S.C. § 1112(b)(4); *In re Mense*, 509 B.R. 269, 277 (Bankr. C.D. Cal. 2014) (*citing In re Albany Partners, Ltd.*, 749 F. 2d 670, 674 (11th Cir. 1984)). The legislative history and case law make clear, however, that "[t]he court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." *In re Hampton Hotel Investors, L.P.*, 270 B.R. 346, 358 (Bankr. S.D.N.Y. 2001); *In re Sparks Dirt Project*, 15 F.3d 1089 (9th Cir. 1994) ("The bankruptcy court has wide discretion to determine whether cause exists under § 1112(b), and under its equitable powers, it may consider factors other than those listed in § 1112(b)."). As one court explained:

> [t]he precise perimeters of 'cause' are intentionally omitted from the statute so as to afford maximum flexibility and, among other things, to enable a bankruptcy court to dismiss a Chapter 11 case for any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy reorganization process.

*In re HBA East, Inc.*, 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988).

In the instant Bankruptcy Case, "cause" to dismiss or convert the Bankruptcy Case exists under multiple theories, including bad faith, consecutive filings, unauthorized filing, and gross mismanagement.

### A. N'Genuity's Chapter 11 Proceeding should be dismissed because N'Genuity did not file for Chapter 11 in good faith.

"Although section 1112(b) does not explicitly require that cases be filed in 'good faith,' courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal." *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994); *see also In re Stolrow's Inc.*, 84 B.R. 167, 170 (B.A.P. 9th Cir. 1988); *Mense*, 509 B.R. at 276 ("Good faith is required in the commencement and prosecution of a chapter 11 case, and the lack thereof constitutes 'cause' for dismissal under § 1112(b)(1) . . .."); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986); *In re N.R. Guaranteed Retirement, Inc.*, 112 B.R. 263, 270 (Bankr. N.D. Ill.), *aff'd*, 119 B.R. 149 (N.D. Ill. 1990). As the *Little Creek* court noted:

> Bankruptcy is an equitable remedy whereby a debtor is clothed with the protection of an automatic stay, preventing his creditors from acting against him for a period of time, in order to facilitate rehabilitation or reorganization of his finances and to promote a 'fresh start' through the orderly disposition of assets

to satisfy creditors. Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings. Such a standard furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands."

779 F.2d at 1071-72 (quoted approvingly by *Mense*, 509 B.R. at 276-77). .

Bankruptcy courts determine "'[t]he existence of good faith [based upon] on an amalgam of factors and not upon a specific fact.'" *See Marsch*, 36 F.3d at 828 (quoting *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986). "The determination 'depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities.'" *Mense*, 509 B.R. at 277 (quoting *Little Creek*, 779 F.2d at 1072). "'In finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions . . .'" *Mense*, 509 B.R. at 277 (quoting *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984)). Ultimately, "[t]he test is whether the debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." *Marsch*, 36 F.3d at 828.

**1. N'Genuity's second bankruptcy filing amounts to bad faith because it cannot show an extraordinary change in circumstances that substantially impaired its performance under the existing plan.**

Consecutive bankruptcy filings are problematic because they could permit a debtor to modify the terms of a previously confirmed and substantially consummated plan – something forbidden by Section 1127(b). *See In re Jartran*, 886 F.2d 859, 867 (7th Cir. 1989); *In re Caviata Attached Homes, LLC*, 481 B.R. 38, 46 (9th Cir. BAP 2012). Accordingly, "[f]or the bankruptcy court to even consider a debtor's second chapter 11 filing and plan, [] unforeseeable or unanticipated change in circumstances must have affected the debtor's ability to fully perform under its confirmed plan." *Caviata Attached Homes,* 481 B.R. at 46. "'[E]ven

8

Case 2:14-bk-11553-GBN    Doc 35    Filed 08/08/14    Entered 08/08/14 14:52:43    Desc
Main Document    Page 8 of 17

extraordinary and unforeseeable changes will not support a new Chapter 11, if these changes do not substantially impair the debtor's performance under the confirmed plan.'" *Id.* at 46; (quoting *In re Adams*, 218 B.R. 597, 602, (Bankr. D. Kan. 1998)). Examples of unforeseen changed circumstances include changes in federal law, termination of service by a vital customer, natural disasters, and substantial adverse judgments. *Caviata Attached Homes*, 481 B.R. at 46. "Cases in which a chapter 11 debtor has been successful at showing unforeseen changed circumstances to warrant a second chapter 11 filing are clearly ***the exception*** rather than the rule." *Id.* (emphasis added). In cases where unforeseen changed circumstances do not exist, a second Chapter 11 filed for the purposes of evading obligations under the confirmed plan is deemed a "bad faith" filing that can be dismissed for cause. *See Jartran*, 886 F.2d at 867. Cause exists for dismissing this Chapter 11 proceeding because N'Genuity cannot show an extraordinary change in circumstances that substantially impairs its performance under the existing plan of reorganization.

N'Genuity cannot identify any extraordinary or unforeseeable circumstances that would support a consecutive filing. As a threshold matter, N'Genuity is substantially outperforming the economic projections attached to its disclosure statement. Indeed, according to N'Genuity's disclosure statement, the N'Genuity anticipated gross sales of $21,130,790 in 2012 and $16,090,598 in 2013. *See* N'Genuity I, Dkt #127-2, Schedule 2, p. 41 of 52 (attached hereto as Exh. A). In fact, however, N'Genuity had gross sales of $31,756,594 in 2012 (over $10 million more than projected) and $22,473,977 in 2013 (over $6 million more than projected). *See* Exhs. B, p. 1; and Exh. C. The gross profits also meet the projections. *See id.* (Total gross profits projected, $3,841,788; total gross profits actual, $3,796,497). N'Genuity's economic fundamentals meet or exceed those anticipated by the company. N'Genuity has not identified, and cannot identify any unforeseen and extraordinary change in the law, loss of a vital customer, natural disaster or substantial adverse judgment that impairs its performance under the existing plan. If anything, the $16 million in additional gross revenue should have afforded N'Genuity a very substantial cushion to meets its obligations under the plan.

9

N'Genuity may argue that its "expenses" have outpaced the plan projections, but those expenses largely consist of payments to Insiders that were not disclosed (over $330,000 to Alfred Bowen and UAE) or substantially exceed (paying Dustin Bowen $220,000 more than his anticipated salary), those set forth in the plan. These were items that were entirely within N'Genuity's control and therefore, by definition, would not warrant a consecutive Chapter 11 filing. Doubtless N'Genuity will argue that Jackson's continued litigation necessitates the second filing but this (a) not a legally supportable basis for a consecutive filing; and (b) eminently foreseeable in light of N'Genuity's decision to continue to pay substantial amounts to Insiders while simultaneously denying Jackson access to books and records that he is plainly authorized to see under Arizona law. Indeed, if N'Genuity should have learned anything it was that Jackson would be resolute in ensuring that N'Genuity abided the plan terms and would not continue to allow misappropriation of company funds to the benefit of Littlechief and her family members.

In short, the gross margins for 2012 and 2013 were 6.5% (2012) and 7.5% (2013) within the range of N'Genuity's known (and disclosed) pre-2011 experience. *See* Exh. A (showing pre-petition range of gross margins from 5.9% to 9.2%). The Court should dismiss this consecutive bankruptcy filing because N'Genuity cannot show an unforeseen and extraordinary circumstance that actually impairs its ability to perform its obligations under its confirmed plan. N'Genuity's excessive payments to Insiders and/or poor management of expenses does not satisfy the legal standard for a consecutive filing.

**2. N'Genuity filed this bankruptcy case to avoid paying Jackson (in bad faith).**

It is abundantly clear that N'Genuity filed this bankruptcy proceeding solely to avoid paying Jackson (and the IRS, the only two unpaid creditors remaining) and delay the 2014 Action. First, there is no evidence that N'Genuity is in need of *further* reorganization. As noted above, N'Genuity already obtained Chapter 11 relief and confirmed a plan of reorganization. N'Genuity is performing better than anticipated under the plan and, notwithstanding excessive payments to Insiders, remains entirely solvent. N'Genuity's petition

attempts to *artificially* manufacture insolvency by including as liabilities over $1.2 million of insider claims. *See* Dkt #1, pp. 5, 6, and 7. These claims, of course, are not real. As noted above, Littlechief's 2009-based claim is barred by (a) N'Genuity's bankruptcy discharge; (b) her failure to file a proof of claim in N'Genuity I; and (c) this Court's ruling that Jackson is a 49% shareholder. IMG's claim was valued at zero by this Court in its Judgment on Jackson's claims. *See* N'Genuity I, Dkt #693, p. 104.

N'Genuity's petition also ignores this Court's ruling on Jackson's shareholder interest from N'Genuity I – an issue N'Genuity has not appealed– by listing Jackson's 49% shareholder interest as "disputed." *See* Dkt #1, pp. 5, 6, and 7. This candid admission makes clear that this bankruptcy case is not about reorganizing creditor-debtor relationships, but is another attempt by Littlechief to take ownership and control of N'Genuity. This type of two-party corporate governance dispute is appropriately remedied through the currently-pending 2014 Action, not the bankruptcy process. *In re Oasis at Wild Horse Ranch, LLC*, Nos. AZ–11–1142–DKiMY, 11–01124–JMM, 2011 WL 4502102, *10 (citing *In re Landmark Capital Co.*, 27 B.R. 273, 279 (D. Ariz. 1983)) ("A chapter 11 reorganization case has been filed in bad faith when it is an apparent two-party dispute that can be resolved outside of the Bankruptcy Court's jurisdiction."); *In re St. Paul Self Storage Ltd. P'ship, 185 B.R. 580, 583 (9th Cir. BAP 1995)*, (holding that a chapter 11 petition in a case involving a two party lawsuit was not filed in good faith).

Indeed, N'Genuity's inability to meaningfully respond to Jackson's allegations in the 2014 Action – the excessive payments to the Insiders – is what is really driving N'Genuity's "new" bankruptcy. The payments to Insiders were not disclosed to this Court, were deliberately hidden by N'Genuity for months (only coming to light when the Northern District ordered the production of N'Genuity's QuickBooks), and were not approved or authorized by any non-conflicted shareholder or direct. Instead of responding to Jackson's allegations on July 29, 2014, as required by the Northern District, N'Genuity opted to file this bankruptcy. As noted above, the "[r]equirement of good faith prevents abuse of the bankruptcy process by

debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes." *Mesne*, 509 B.R. at 277 (quoting *Little Creek*, 779 F.2d at 1072).

The totality of N'Genuity's conduct, spanning more than three years and multiple bankruptcy filings, clearly show that N'Genuity sought the refuge of the bankruptcy court for the sole purpose of avoiding its obligations to Jackson under the existing plan and delay its day of reckoning in the Illinois District Court. The only "real," i.e., non-ordinary course creditors are Jackson and the IRS. There is more than enough money to pay Jackson and the IRS from N'Genuity's business operations outside of bankruptcy. Accordingly, the Court should dismiss N'Genuity's Chapter 11 petition with prejudice.

### 3. N'Genuity is grossly mismanaged.

Cause also exists to dismiss N'Genuity's Chapter 11 because it lacks a competent reorganization management team. *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007) ("Failure to maintain an effective corporate management team has been held to constitute gross mismanagement."). Previously, this Court was "absolutely convinced debtor through its insiders worked a significant harm and appreciable injustice on the minority shareholder by their actions and failure to act regarding financial management, record keeping and undisclosed insider transactions." N'Genuity I, Dkt #693, p. 101. Regrettably, and as set forth above, N'Genuity and its Insiders have continued those practices post-confirmation. As set forth above, those post-confirmation payments include: $302,043.63 paid Alfred Bowen's UAE (substantially more than the $5,000 per month previously represented to this Court), *see* Exh. D; direct payments to Alfred Bowen of $29,608.96, *see* Exh. E; and $588,426.78 to Dustin Bowen – over $220,000 more than his purported annual salary under N'Genuity's confirmed plan. *See* Exh. F. As set forth in prior pleadings before this Court, additional post-confirmation payments were also made on behalf of IMG to one of IMG's creditors, and to Rae Lamb (Littlechief's mother). *See* Dkt #752, p. 11. Unauthorized payments to insiders constitute gross mismanagement. *See In re Gateway Access Solutions, Inc.*, 374 B.R. at 566 (finding that

entering into unauthorized borrowings amounted to gross mismanagement).

N'Genuity has also paid N'Genuity's counsel over half a million dollars – without paying Jackson's counsel anything since this Court entered its Judgment. That Judgment required that payments to counsel for Jackson and counsel for N'Genuity would share equal priority. *See* Dkt #693, p. 103. Plainly, N'Genuity's management and its counsel) have ignored the Court's ruling.

It is not in the best interest of the creditors to allow these practices to continue. N'Genuity's managers have demonstrated a complete disregard of their fiduciary duties to Jackson and cannot be trusted to honor the fiduciary duties they owe to creditors.

### 4. The Bankruptcy petition was unauthorized.

The case should also be dismissed because N'Genuity's bankruptcy petition was not authorized. "It is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed." *In re Real Homes, LLC*, 352 B.R. 221, 225 (Bankr. D. Id. 2005). This Court's October 28, 2013 Judgment expressly stated, "Mr. Jackson retains a 49 per cent interest in the reorganized debtor. Legally required notice to him of subsequent meetings and the continuances of such and legally required notice of ***N'Genuity's contemplated actions shall not be considered valid without evidence of the use of certified mail or its equivalence*** and retention of receipts reflecting successful delivery." N'Genuity I, Dkt. #693, p. 102 (emphasis added). N'Genuity did not provide notice of the corporate meeting in which N'Genuity decided to file for bankruptcy, rendering that decision invalid as a matter of law.

### B. If the Court does not dismiss the case, the Court should appoint a Chapter 11 Trustee.

The determination of whether to dismiss a chapter 11 case, to convert it, or to appoint a trustee is committed to the Court's sound judicial discretion. *See, e.g., In re BTS, Inc.*, 247 B.R. 301, 309 (Bankr. N.D. Okla. 2000) (collecting cases). If the Court does not dismiss N'Genuity's bankruptcy, it ought to appoint a Trustee because, as demonstrated above, N'Genuity is a functioning, solvent business capable of paying its creditors.

13

The diversion of funds and misuse of corporate assets constitute the fraud or dishonesty sufficient to warrant appointment of a trustee under section 1104(a)(1). *In re PRS Ins. Group, Inc.*, 274 B.R. 381, 385 (Bankr. D. Del. 2001). The appointment of a trustee is "highly desirable to prevent looting of an estate," where, as here, management has engaged in siphoning funds from the debtor. *See, e.g., In re Bibo, Inc.*, 76 F.3d 256, 257-58 (9th Cir. 1996), *see also In re Sharon Steel*, 871 F.2d 1217, 1228 (3d. Cir. 1989) (systematic siphoning of debtor's assets to other companies under shareholder's common control constituted cause for appointment of trustee).

A trustee is also warranted where the debtor's assets are subject to a continuing risk of dissipation and diversion to management and management's family or related companies. *In re Professional Accountants Referral Svcs., Inc.*, 142 B.R. 424, 428-29 (Bankr. D. Colo. 1992), *see also In re Colby Constr., Inc.*, 51 B.R. 113, 116 (Bankr. S.D.N.Y. 1985) (majority shareholder's "deliberate and unabashed conversion of corporate assets to acquire another company in his own name indicates the *scienter* implicit in fraud as that term is used in § 1104(a)(1) or at least the dishonesty contemplated by that section"). Here, as set forth in detail above, there is ample evidence that N'Genuity's insiders have diverted substantial money to themselves without disclosure and without proper authorization. Notwithstanding the Northern District's injunction, or this Court's findings of poorly documented insider dealings, N'Genuity's Insiders continue to loot the company.

If the Court does not dismiss, the Court must appoint a Chapter 11 Trustee to avoid continuing loss to N'Genuity's bankruptcy estate. In the last six months, N'Genuity's Insiders have paid themselves almost half a million dollars. These payments were not authorized by any non-conflicted director or shareholder and are far in excess of amounts previously represented to the Court regarding salaries (Dustin Bowen) and consulting payments (UAE).

**C. Jackson should be awarded his fees and costs as a sanction for N'Genuity's improperly filed Chapter 11 petition.**

Under governing Ninth Circuit authority, this Court has the discretion to award sanctions against N'Genuity for filing a Chapter 11 petition for an improper purpose. *See*

14

*Marsch*, 36 F.3d at 830-31. Sanctions are appropriate here. N'Genuity is operating under a confirmed plan of reorganization. It has outperformed its projections by almost 50%. It has paid all but two of its creditors under the plan (the two that chose to litigate). After Jackson sued N'Genuity, and after N'Genuity's QuickBooks revealed the scope of N'Genuity's unauthorized payments to its Insiders, N'Genuity sought bankruptcy protection on the eve of (a) having to respond to those allegations; and (b) having to respond to this Court's award of attorneys' fees. The petition that was filed misrepresents N'Genuity's solvency by including claims that are (1) barred by the discharge; (2) barred by the failure to file a proof of claims; or (3) barred by this Court's previous decisions. The same petition lists Jackson's 49% shareholder status as disputed – despite this Court's un-appealed ruling that Jackson is a 49% shareholder. N'Genuity's corporate authorization to file reflects the fact that it ignored this Court's order to give notice to Jackson of all corporate meetings and instead unilaterally filed the bankruptcy. Under these circumstances, the Court has ample evidence to determine that N'Genuity filed for Chapter 11 for an improper purpose.

## IV. CONCLUSION

For the foregoing reasons, Jackson requests that the Court dismiss this bankruptcy case with prejudice and award Jackson sanctions for the costs incurred in connection with the dismissal. Alternatively, Jackson requests the appointment of a Chapter 11 Trustee. Jackson further requests any other relief that the Court deems appropriate.

DATED this 8th day of August, 2014.

                                    OSBORN MALEDON, P.A.


                        By    /s/Warren J. Stapleton
                             Warren J. Stapleton
                             2929 N Central Ave   21st Floor
                             Phoenix, Arizona 85012-2793
                             Attorneys for Vincent Jackson

| | | |
|---|---|---|
| 1 | COPY of the foregoing sent<br>this 8th day of August, 2014. | |
| 2 | | |
| 3 | Patty Chan<br>U.S. Trustee<br>Office of the U.S. Trustee | Lindsi Weber<br>John Clemency<br>Gallagher & Kennedy, P.A. |
| 4 | 230 N First Ave Ste 204<br>Phoenix AZ 85003 | 2575 E Camelback Rd<br>Phoenix AZ 85016-9225 |
| 5 | | |
| 6 | M. W. Carmel<br>80 E. Columbus Ave.<br>Phoenix AZ 85012-2334 | Steven N. Berger<br>Engelman Berger, PC<br>3636 N Central Ave Ste 700 |
| 7 | Michael@mcarmellaw.com<br>*Former Chapter 11 Trustee* | Phoenix AZ 85012<br>snb@eblawyers.com |
| 8 | | *Attorneys for Brand Law Group* |
| 9 | Michael J. Small<br>Foley & Lardner LLP | Lauren M. Castaldi<br>Kathryn Keneally |
| 10 | 321 N Clark St Ste 2800<br>Chicago IL 60634-5313 | U.S. Dept. of Justice<br>PO Box 683, Ben Franklin Station |
| 11 | msmall@foley.com<br>*Attorneys for Quantum Foods, LLC* | Washington, D.C. 20044-0683 |
| 12 | | |
| 13 | Harold E. Campbell<br>Campbell & Coombs, P.C. | Nate Svette<br>The Cadle Company |
| 14 | 1811 S. Alma School Road, Suite 225<br>Mesa, Arizona 85210 | Attn: ODI00002<br>100 N Center St |
| 15 | *Attorneys for Dustin Bowen* | Newport Falls OH 44444<br>nate.svette@cadleco.com |
| 16 | David N. Ingrassia, Esq.<br>3941 E. Chandler Blvd., Ste 106-119 | Paul N. Gilmore<br>Updike, Kelly & Spellacy, P.C. |
| 17 | Phoenix, AZ 85048<br>*Attorneys for The Cadle Company* | Po Box 231277<br>100 Pearl St. |
| 18 | | Hartford, CT 06123-1277<br>*Attorneys for The Cadle Company* |
| 19 | | |
| 20 | Jennifer L. Maffett<br>Thompson Hine LLP<br>Austin Landing I | Steven Cox<br>Waterfall, Economidis, Caldwell, Hanshaw &<br>Villamana, P.C. |
| 21 | 10050 Innovation Dr Ste 400<br>Dayton OH 45342-4934 | 5210 E. Williams Circle Ste 800<br>Tucson AZ 85711 |
| 22 | *Attorneys for AdvancePierre Foods, Inc.* | *Attorneys for Ally Financial* |
| 23 | Paul Sala<br>Allen, Sala & Bayne, PLC | Eugene J. Geekie, Jr.<br>Karen V. Newbury |
| 24 | 1850 N Central Ave Ste 1150<br>Phoenix AZ 85004 | Schiff Hardin<br>233 S Wacker |
| 25 | *Attorneys for Valerie LittleChief* | Chicago IL 60606 |
| 26 | April Theis<br>Assistant Attorney General | Rachel J. Zepeda<br>Special Assistant U.S. Attorney |
| 27 | 1275 W Washington St<br>Phoenix AZ 85007-2926 | 4041 N Central Ave<br>M/S 2200PX |
| 28 | | Phoenix AZ 85012 |

| | | |
|---|---|---|
| 1 | | |
| 2 | Cindy Lee Greene<br>Carmichael & Powell, P.C. | James Portman Webster<br>James Portman Webster Law Office, PLCC |
| 3 | 7301 N 16th St Ste 103<br>Phoenix AZ 85020-5297<br>*Attorneys for Impact Marketing Group* | 1845 S Dobson Rd Ste 201<br>Mesa AZ 85202<br>*Attorneys for GFI* |

Cindy Lee Greene
Carmichael & Powell, P.C.
7301 N 16th St Ste 103
Phoenix AZ 85020-5297
*Attorneys for Impact Marketing Group*

James Portman Webster
James Portman Webster Law Office, PLCC
1845 S Dobson Rd Ste 201
Mesa AZ 85202
*Attorneys for GFI*

Robert R. Berk
Jones, Skelton & Hochuli PLC
2901 N Central Ave Ste 800
Phoenix AZ 85012
*Attorneys for Wayne Clouser Assoc.*

/s/ Mary L. Ligouri