John R. Clemency (009646)
Lindsi M. Weber (025820)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
Phone: (602) 530-8000
Facsimile: (602) 530-8500
E-mail: john.clemency@gknet.com
lindsi.weber@gknet.com
*Attorneys for N'Genuity Enterprises Co.*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>N'GENUITY ENTERPRISES CO.,<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No. 2:14-bk-11553-GBN<br><br>**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING SHORT TERM CREDIT FACILITY SECURED BY SENIOR LIENS ON PROPERTY OF THE ESTATE**<br><br>**Expedited Consideration Requested** |

N'Genuity Enterprises Co. ("N'Genuity" or the "Debtor"), debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "Case"), hereby moves the Court for interim and final orders pursuant to §§ 105, 361, 362, 363, 364 and 507 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-4 of the Local Rules of Bankruptcy Procedure, granting, among other things, the relief summarized below:

- THE PROPOSED DIP LENDER IS NOT A PREPETITION SECURED CREDITOR OF THE DEBTOR.
- THE PROPOSED DIP LENDER IS A PREPETITION UNSECURED CREDITOR OF THE DEBTOR.
- THE PROPOSED LIENS GRANTED TO DIP LENDER WILL BE FIRST PRIORITY, VALID AND PERFECTED LIENS ON PROPERTY OF THE

ESTATE (ACCOUNTS RECEIVABLE) THAT IS NOT OTHERWISE SUBJECT TO A LIEN.

- THE PROVISIONS OF THE AUTOMATIC STAY SHALL BE WAIVED TO THE EXTENT NECESSARY TO ALLOW THE DIP LENDER TO PERFECT ITS SECURITY INTEREST AND LIEN GRANTED PURSUANT TO THE DIP CREDIT AGREEMENT AND RELATED DOCUMENTS.

(i) authorizing the Debtor to obtain on a final basis up to $700,000 of secured postpetition financing (the "DIP Facility") from Monogram Prepared Meats, LLC ("Monogram" or "DIP Lender"), pursuant to the terms and conditions of that certain Credit and Security Agreement (the "DIP Credit Agreement") attached as Exhibit "A";

(ii) authorizing the Debtor to execute and deliver the DIP Credit Agreement and related loan documents (collectively, the "DIP Documents");

(iii) granting to the DIP Lender automatically perfected, first and prior security interests in and liens on all of the DIP Collateral (as defined herein) for the DIP Facility and all obligations owing thereunder and under the DIP Documents (collectively, and as further described in the DIP Credit Agreement, the "DIP Obligations");

(iv) vacating and modifying the automatic stay imposed by § 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the DIP Documents;

(v) scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing; and

(vi) waiving the fourteen (14) day stay provisions of Federal Rule of Bankruptcy Procedure 6004(h).

This Motion is supported by the *Declaration of Valerie M. LittleChief in Support of Debtor's Chapter 11 Petition and Early Case Filings* (Dkt. #2; the "LittleChief Declaration"), the *Declaration of Dustin Bowen in Support of Financing Motion* (the

2

"Bowen Declaration") attached as Exhibit "B," and the proposed form of *Interim Order (A) Approving Senior Secured Postpetition Financing, (B) Granting Senior Liens, and (C) Scheduling Final Hearing* (the "Interim Order"), attached as Exhibit "C."

In further support of the Motion, the Debtor states as follows:

**JURISDICTION**

1. On July 28, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. An Official Committee of Unsecured Creditors has not been appointed.

2. This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

3. The statutory predicates for the relief requested are Bankruptcy Code §§ 105, 361, 362, 363, 364 and 507, Bankruptcy Rules 2002 and 4001, and Local Rule 4001-4.

**FACTUAL BACKGROUND**

4. N'Genuity offers quality food products and exemplary service while providing socio-economic benefits to a vast client base within the food service industry.

5. N'Genuity's certifications include:
   - U.S. Small Business Administration Small Disadvantaged Business (SDB) Certified
   - U.S. Small Business Administration Woman Owned Business (WOB)
   - U.S. Small Business Administration Native American Business
   - Department of Defense (DoD) Registered
   - Central Contractor Registration (CCR)
   - MPA Approved Supplier

3

6. N'Genuity offers customers the very finest protein products available in the market. All of its products are produced in USDA-approved facilities that have earned numerous industry awards.

7. N'Genuity utilizes a series of programs that monitor both environment and finished product to ensure the highest quality of products.

8. N'Genuity offers a "Signature Product" for its customers, understanding that each customer's needs are unique. The ability to provide precision portion-control, while maintaining the ability to ship coast-to-coast and internationally in an expeditious manner is what sets N'Genuity apart.

9. N'Genuity products are available:
- Portioned
- Commodity
- RTC
- Fully Cooked
- Bulk

10. N'Genuity sells the majority of its products through two channels. One channel is as a prime contractor for United States Military agencies. N'Genuity has contractual relationships with many government entities for the purchase and service of its products. The primary channel involves N'Genuity subcontracting with other prime government contractors to U.S. Military agencies.

11. N'Genuity gets a competitive advantage from SBA, which is vital to the success of the company. This special status under SBA programs is critical to N'Genuity's continued success because it provides many advantages that allow N'Genuity to successfully bid on government contracts and subcontracts.

12. The majority of N'Genuity's business operations are conducted from its leased commercial space in Scottsdale, Arizona. N'Genuity's primary operations are located at 8901 E. Pima Center Parkway, Suite 135, Scottsdale, Arizona 85258.

13. Although the Debtor continues to operate, ongoing litigation with its

minority owner has made it difficult for N'Genuity to operate its business and pursue opportunities in light of the crushing weight of the expense and related problems caused by Jackson's litigation assault. Without working capital financing, N'Genuity is in jeopardy of running out of cash in the short term to fund bacon purchases (one of the primary products sold by N'Genuity). As discussed in the Bowen Declaration, N'Genuity has identified a lender that is willing to provide up to $700,000 of short term debtor in possession financing.

14. The working capital financing, if approved and obtained, should be sufficient to allow N'Genuity to continue to operate and sell bacon to its customers.

**RELIEF REQUESTED**

15. Without working capital financing for future purchases, the Debtor is in danger of running short of working capital to maximize its sales and business operations. If the Debtor runs out of cash in the short term, it will cause immediate and irreparable harm to the Debtor and its estate.

16. Subject to Bankruptcy Court approval, the Debtor and Monogram Prepared Meats, LLC ("DIP Lender") negotiated terms for a short term credit facility (the "DIP Credit Agreement") pursuant to which DIP Lender has agreed to provide up to $700,000 of debtor in possession financing to the Debtor. The primary terms of the financing are as follows:

    A. Maximum Loan Amount: $700,000.00 through 8/21/2014, reducing to $550,000.00 on 8/22/2014, $200,000.00 on 8/29/2014 and $0 on 9/5/2014 when the account will then be on "Cash in Advance".

    B. Term: 30 days with no interest, with a 15-day extension with interest as provided below.

    C. DIP Collateral: a perfected security interest and first lien in all outstanding accounts receivables of N'Genuity (contingent upon the outstanding accounts receivables being greater than or equal to the amounts owed to Monogram or Monogram Food Solutions, LLC or any of its subsidiaries).

5

Case 2:14-bk-11553-GBN   Doc 41   Filed 08/13/14   Entered 08/13/14 15:00:55   Desc
Main Document    Page 5 of 12

D. <u>Interest Rate</u>: 0% as long as scheduled payments are made as agreed; 10% annual interest on outstanding balance if any scheduled payment is not timely received.

E. <u>Payment Schedule</u>:
- Payment #1 - $200,000.00 received on 8/15/2014;
- Payment #2 - $400,000.00 received on 8/22/2014;
- Payment #3 - $100,000.00 received on 8/29/2014;
- Final Payment – Outstanding balance (approximately $100,000.00 depending on value of goods shipped) received on 9/5/2014.

F. <u>Stay Relief</u>: automatic stay is modified to permit the Debtor to grant the security interest and liens, perform acts required under the loan documents, incur the obligations under the loan documents, and allow the Debtor to pay, and the lender to apply, payments under the DIP loan.

17. The Debtor does not have a prepetition working capital lender. No creditor has, or to the best knowledge of the Debtor claims, a lien in the Debtor's cash or accounts receivable.

18. The ability of the Debtor to obtain working capital financing and liquidity through the proposed financing on an emergency basis is critically important. Absent the requested financing, the Debtor may have insufficient cash to meet payroll, fill orders, and meet other operating expenses in the short term making it impossible for the Debtor to continue to operate and fulfill customer needs.

19. The Debtor has been unable to obtain adequate unsecured credit; and has been unable to obtain debtor in possession financing absent the Debtor granting the proposed lender a first priority lien on accounts receivable as set forth above.

20. The debtor-in-possession financing and the terms of the DIP Credit Agreement were negotiated in good faith and at arms-length by the Debtor and DIP Lender. Under the circumstances, the terms of the DIP Credit Agreement are the most

favorable terms available to the Debtor, and are fair and reasonable. The terms of the DIP Credit Agreement reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and the liens to be granted in exchange for the financing are supported by reasonably equivalent value and fair consideration.

## BASIS FOR RELIEF REQUESTED

The Bankruptcy Code authorizes a debtor in possession to obtain financing postpetition pursuant to § 364. In this regard § 364 provides in relevant part as follows:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt--
>
> > (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
> > (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> > (3) secured by a junior lien on property of the estate that is subject to a lien.

*See* 11 U.S.C. § 364(c).

The Debtor has been unable to locate financing other than financing secured by a first priority senior lien on the Debtor's accounts receivable. As a result, the Debtor accepted the DIP Lender's proposal for post-petition financing secured by a senior lien on the Debtor's accounts receivable pursuant to the terms of the DIP Credit Agreement. In these circumstances, the Bankruptcy Code imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable. *In re Snowshoe Company*, 789 F.2d 1085, 1088 (4th Cir. 1986) There are few lenders likely to be able or willing to extend the necessary credit to the Debtor, and it would be unrealistic and unnecessary to require the debtor to conduct an exhaustive search for financing when the terms offered by the DIP Lender are so favorable. *See In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988).

As set forth above, and in the Bowen Declaration, after appropriate investigation and analysis, the Debtor reasonably concluded that the DIP Lender's proposal was the best,

if not the only, alternative available to the Debtor. Accordingly, the Debtor has concluded in its business judgment that the DIP Facility is the most favorable for this estate. The Debtor's efforts in this regard satisfy the statutory requirements of § 364(c). The proposed terms of the DIP Facility are fair, reasonable and adequate in that these terms neither tilt the conduct of this Case nor prejudice the powers and rights the Bankruptcy Code confers for the benefit of all creditors. The purpose of the DIP Facility is to enable the Debtor to maintain the stability of its operations during this Chapter11 case, and the financing for all practical purposes is free and will be paid off in relatively short order. *See* Bowen Declaration.

As described above, after appropriate investigation and analysis, the Debtor has concluded the DIP Facility is the best alternative available under the circumstances. Bankruptcy courts routinely defer to the Debtor's business judgment on most business decisions, including the decision to borrow money. *See Group of Instituional Investors vs. Chicago Mil. St. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo., 1985) (business judgment should be left to the board room and not to the bankruptcy court); *In re Lifeguard Industries, Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio, 1983). More exacting scrutiny would slow the administration of the Debtor's estate and increase costs, interfere with the Bankruptcy Code's provisions for private control of administration of the estates, and threaten the Court's ability to control a case impartially. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

In general, a bankruptcy court should defer to a debtor's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *In re Curlew Valley Assoc.*, 14 B.R. 507, 511-14 (Bankr. D. Utah 1981) (courts generally will not second guess a debtor's business decision when those decisions involve a business judgment made in good faith, upon a reasonable basis, and within the scope of authority granted under the Bankruptcy Code). The Debtor has exercised sound business judgment in determining that the DIP Facility is appropriate, and has satisfied the legal prerequisites to borrow under the DIP Facility. The terms of the DIP Facility are fair and

8

Case 2:14-bk-11553-GBN    Doc 41    Filed 08/13/14    Entered 08/13/14 15:00:55    Desc
Main Document    Page 8 of 12

reasonable and are in the best interest of the estate. Indeed, the DIP Facility provides financing for a period of time at zero % interest, and thus does not burden the Estate much at all. Also, the DIP Facility will be repaid in under sixty (60) days. Accordingly, under Bankruptcy Code §364(c), the Debtor should be granted authority to enter into the DIP Facility and to borrow funds from the DIP Lender on the basis described above. Absent the relief requested, the Debtor and the estate will suffer immediate and irreparable harm.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests the entry of an interim order in the form attached hereto as Exhibit "C" granting, among other things, the following relief:

A. Authorizing the Debtor to execute and deliver the DIP Documents;

B. Authorizing the Debtor to obtain on an interim basis, postpetition financing in the amount of up to $700,000, pending the Final Hearing;

C. Authorizing the Debtor to obtain, on a final basis, up to $700,000 of secured postpetition financing under the DIP Facility;

D. Granting to the DIP Lender automatically perfected senior security interests in and liens on the DIP Collateral (as defined herein);

E. Vacating and modifying the automatic stay imposed by § 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the DIP Documents and this Interim Order;

F. Scheduling a Final Hearing to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing;

G. Waiving the fourteen (14) day stay provisions of Federal Rule of Bankruptcy Procedure 6004(h); and

I. Granting the Debtor such other and further relief as the Court deems just and appropriate.

RESPECTFULLY SUBMITTED this 13th day of August, 2014.

GALLAGHER & KENNEDY, P.A.

By: */s/ Lindsi M. Weber*

9

| | |
|---|---|
| 1<br>2<br>3 | John R. Clemency<br>Lindsi M. Weber<br>2575 E. Camelback Road<br>Phoenix, Arizona 85016<br>*Attorneys for N'Genuity Enterprises Co.* |

COPIES of the foregoing were served
this 13th day of August, 2014, via
first-class, U.S. Mail, Email, and/or Facsimile
to the parties on the service list attached to the
Court's copy only.

*/s/ Gloria Kannberg*

| | |
|---|---|
| AUTO-OWNERS INSURANCE<br>1860 SOUTH POWER ROAD<br>MESA, AZ 85206 | BEST LIFE<br>P.O. BOX 19721<br>IRVINE, CA 92623-1603 |
| CLICK COMPUTER SERVICES<br>11445 EAST VIA LINDA, SUITE 2<br>PMB 168<br>SCOTTSDALE, AZ 85259 | DESERT MINI STORAGE<br>26520 NORTH ALMA SCHOOL ROAD<br>SCOTTSDALE, AZ 85255 |
| FACE CANYON, LLC<br>1188 EAST CAMELBACK ROAD<br>PHOENIX, AZ 85014 | FEDERAL EXPRESS<br>P.O. BOX 7221<br>PASADENA, CA 91109-7321 |
| HENSON DESIGNS, LLC<br>24417 NORTH 37TH LANE<br>GLENDALE, AZ 85310 | IMPACT MARKETING GROUP, LLC<br>15560 N. FRANK LLOYD WRIGHT BLVD.<br>B-4 #436<br>SCOTTSDALE, ARIZONA 85260 |
| KOCH FOODS, INC.<br>1300 HIGGINS ROAD<br>STE. 100<br>PARK RIDGE, IL 60068 | MONOGRAM PREPARED MEATS<br>C/O MONOGRAM CORPORATE HEADQUARTERS<br>930 SOUTH WHITE STATION ROAD<br>MEMPHIS, TN 38117 |
| NEXTIVA<br>8800 EAST CHAPARRAL ROAD<br>STE. 300<br>SCOTTSDALE, AZ 85250 | PAUL NICHOLAS GILMORE<br>UPDIKE KELLY & SPELLACY PC<br>100 PEARL STREET, 17TH FLOOR<br>HARTFORD, CT 06103 |

10

| | | |
|---|---|---|
| 1 | QUARLES & BRADY LLP<br>C/O CHRISTOPHER COMBEST<br>300 NORTH LASALLE ST., STE. 4000<br>CHICAGO, IL 60654 | SADDLEBACK COMMUNICATIONS<br>P.O. BOX 171230<br>SAN ANTONIO, TX 78217-8230 |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | SPARKLETTES<br>ATTN: AR PROCESSING<br>3302 WEST EARLL DRIVE<br>PHOENIX, AZ 85017 | STEVEN N. BERGER<br>ENGELMAN BERGER PC<br>3636 NORTH CENTRAL AVE., STE 700<br>PHOENIX, AZ 85012 |
| 7 | | |
| 8 | | |
| 9 | SUBSISTENCE STRATEGIC MATERIAL SOURCING<br>SUBSISTENCE SUPPLIER OPERATIONS<br>700 ROBBINS AVE.<br>PHILADELPHIA, PA 19111 | SYSCO CORPORATION<br>1390 ENCLAVE PARKWAY<br>HOUSTON, TX 77077 |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | THE CADLE COMPANY<br>100 NORTH CENTER STREET<br>NEWTON FALLS, OH 44444 | VALERIE M. LITTLECHIEF<br>8901 EAST PIMA CENTER PARKWAY, STE 135<br>SCOTTSDALE, AZ 85258 |
| 14 | | |
| 15 | VERIZON WIRELESS<br>BANKRUPTCY ADMINISTRATION<br>500 TECHNOLOGY DRIVE<br>SUITE 550<br>WELDON SPRING, MO 63304 | VINCENT JACKSON<br>C/O WARREN J. STAPLETON<br>OSBORN MALEDON PA<br>2929 NORTH CENTRAL AVE., STE 2100<br>PHOENIX, AZ 85012 |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | WEB. COM<br>12808 GRAN BAY PARKWAY WEST<br>JACKSONVILLE, FL 32258 | WEST LIBERTY FOODS/QUANTUM FOODS<br>750 SOUTH SCHMIDT ROAD<br>BOLINGBROOK, IL 60440 |
| 21 | | |
| 22 | PATTY CHAN<br>OFFICE OF THE UNITED STATES TRUSTEE<br>230 N. FIRST AVENUE, SUITE 204<br>PHOENIX, AZ 85003-1706 | ARIZONA DEPARTMENT OF REVENUE<br>SPECIAL OPERATIONS UNIT<br>1600 W. MONROE 7TH FLOOR<br>PHOENIX, AZ 85007 |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | DEPARTMENT OF TREASURY<br>INTERNAL REVENUE SERVICE<br>FRESNO CA 93888-0002 | LAUREN MARIE CASTALDI<br>US DEPARTMENT OF JUSTICE, TAX DIVISION<br>PO BOX 683<br>WASHINGTON, DC 20044 |
| 27 | | |
| 28 | | |

| | | |
|---|---|---|
| 1 | | |
| 2 | RACHAEL J. ZEPEDA<br>TREASURY, CHIEF COUNSEL, SW DIST - IRS<br>4041 N. CENTRAL STE 112<br>MS 2200PX<br>PHOENIX, AZ 85012 | DALE ULRICH<br>CHAPTER 7 PANEL TRUSTEE<br>PMB-615 1928 E. HIGHLAND #F104<br>PHOENIX, AZ 85016-4626 |
| 5 | HEALTH NET OF ARIZONA, INC.<br>1230 WEST WASHINGTON AVE.,<br>SUITE 401<br>TEMPE, AZ 85281 | NOVELASPECT.COM<br>400 OYSTER PT. BLVD.#417<br>SOUTH SAN FRANSICSO, CA 94080 |
| 8 | ILLINOIS DEPARTMENT OF REVENUE<br>P.O. BOX 19052<br>SPRINGFILED, IL 69794-9052 | ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY<br>P.O. BOX 19300<br>SPRINGFIELD, IL 62794-9300 |
| 11 | BECKMAN & KUNKIN PC<br>14850 NORTH SCOTTSDALE RD.,<br>#205<br>SCOTTSDALE, AZ 85254 | BELZER PC<br>2905 BULL STREET<br>SAVANNAH, GA 31405 |
| 14 | SAFEGUARD<br>8454 N. 90th STREET<br>SCOTTSDALE, AZ 85258 | |

12